NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS R. MORILLA, Administrator of the Estate of Felicia Morilla, deceased, and LUIS C. MORILLA, <br><br> Plaintiffs, <br><br> v. <br><br> LASER SPINE INSTITUTE, LLC, and JOHN DOES [1-5], <br><br> Defendants. | **OPINION** <br><br> Civ. No. 2:10-cv-01882 (WHW) |

**Walls, Senior District Judge**

Plaintiffs, Luis R. Morilla (in his capacity as administrator of the estate of Felicia Morilla) and Luis C. Morilla, sued defendants Laser Spine Institute, LLC and unidentified persons in the Superior Court of New Jersey on January 12, 2010. Defendants removed to this Court on April 13, 2010, and moved to dismiss the complaint for lack of personal jurisdiction on April 27, 2010. The motion to dismiss is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 2007, plaintiff Luis R. Morilla saw an internet advertisement for Laser Spine Institute's surgical services, which he brought to the attention of his mother, Felicia Morilla, who suffered from back pain. (Compl. ¶¶ 6-7.) Mrs. Morilla traveled to Laser Spine Institute's clinic in Tampa, Florida, on August 14, 2007 and over the course of two days received consultations and pre-operative examinations, followed by a recommendation for surgery. (Compl. ¶¶ 13-15.) On October 29, 2007, Mrs. Morilla returned to Tampa where she underwent additional pre-

operative examinations.  (Compl. ¶ 16.)  On October 30, 2007 defendants performed surgery on Mrs. Morilla.  (Compl. ¶ 17-18.)  They gave her a post-operative evaluation on November 1, 2007.  (Compl. ¶ 19.)

Plaintiffs claim that during the course of communicating with Laser Spine Institute, defendants represented that Mrs. Morilla's insurer would eventually reimburse her for the procedure.  Defendants required a $30,000 retainer to ensure that the medical expenses would be covered in the meantime.  (Compl. ¶¶ 20-21.)  Plaintiffs paid the retainer to defendants.  After the surgery, however, the insurance company denied the claim, and defendants did not reimburse plaintiffs.  (Compl. ¶¶ 25-26.)

Plaintiffs brought suit in New Jersey Superior Court on January 12, 2010, alleging violations of the New Jersey Consumer Fraud Act and breach of contract, seeking damages of at least $90,000.  (Compl. ¶¶ 36, 39.)  Defendants removed to this Court on April 13, 2010, on the basis of diversity jurisdiction.  Defendants then moved on April 27, 2010 to dismiss the complaint for lack of personal jurisdiction, contesting that Laser Spine Institute, a resident of Florida, does not have sufficient contacts with New Jersey to justify subjecting it to the jurisdiction of this Court.  (Defs.' Mot. to Dismiss 4, Apr. 27, 2010.)

Plaintiffs oppose defendants' motion by challenging this Court's subject matter jurisdiction, claiming that the amount in controversy is not more than $75,000 and is therefore insufficient to satisfy the requirements of 28 U.S.C. § 1332.  (Pls.' Mem. in Opp'n to Mot. to Dismiss 2 ("Pls.' Opp. Mem.").)  Plaintiffs further contest that defendants have voluntarily consented to jurisdiction and hence waived their right to the jurisdictional defense by removing to this court.  (Pls.' Opp. Mem. 2-3.)  Finally, plaintiffs insist that this Court has personal

jurisdiction over defendants because defendants operated a website that was viewable in New Jersey. (Pls.' Opp. Mem. 4.)

## DISCUSSION

### I.  Subject Matter Jurisdiction

A challenge to a federal court's subject matter jurisdiction can be raised at any point in a proceeding. Kontrick v. Ryan, 540 U.S. 443, 455 (2004). When a case is in federal court on the basis of diversity jurisdiction, the plaintiff must plead facts showing both that the parties are citizens of different states and that there is an amount in controversy exceeding $75,000, excluding costs and interest. 28 U.S.C. § 1332(a) (2006).

If the case was removed to federal court from state court, then the defendant has the burden of demonstrating the existence of subject matter jurisdiction. See Frederico v. Home Depot, 507 F.3d 188, 196-97 (3d Cir. 2007); In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 503 (D.N.J 1997), *aff'd in part, remanded in part on other grounds*, 133 F.3d 225 (3d Cir. 1998) ("The party asserting federal subject matter jurisdiction must demonstrate that the amount in controversy requirement is satisfied."). In such a case, when a plaintiff challenges a defendant's assertion of subject matter jurisdiction, and the complaint asserts that the amount in controversy is worth more than $75,000, the plaintiff must show *to a degree of legal certainty* that the amount in controversy is in fact less than $75,000. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-290 (1938); Frederico v. Home Depot, 507 F.3d at 196 (where the complaint asserts that the amount in controversy is less than $75,000, the burden shifts to the defendant who must prove to a degree of legal certainty that the case is worth more than $75,000).

This is such a case. In removing, defendants repeat the complaint's allegation that the amount in controversy is at least $90,000.[1] (Defs.' Notice of Removal 2, Apr. 13, 2010.) Because plaintiffs had no motive to exaggerate the amount in controversy, this Court finds that plaintiffs' original estimation of the amount in controversy is a reasonable approximation of the claims' value. Red Cab Co., 303 U.S. at 289 ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith."); Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006).

Because the complaint asserts damages of at least $90,000, to succeed in their challenge, plaintiffs must show to a degree of legal certainty that the amount in controversy is less than $75,000. See Red Cab, 303 U.S. at 289. Plaintiffs cannot meet this heavy burden. As alleged in the complaint, plaintiffs seek actual damages of up to $30,000, worth $90,000 under the New Jersey Consumer Fraud Act, which provides for treble damages. (Compl. 8; Pls.' Opp. Mem. 2; N.J. Stat. Ann. § 56:8-19 (West 2001); Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994).)

Plaintiffs' assert that "treble damages . . . do not constitute a claim." (Pls.' Opp. Mem. 2.) Plaintiffs are incorrect. Treble damages are to be considered part of the amount in controversy for the purpose of satisfying the jurisdictional requirement, when plaintiff is not clearly and obviously prevented from recovering under the New Jersey Consumer Fraud Act. Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997) ("[W]e have explained that the court should include the treble damages available under the NJCFA in calculating the amount in controversy . . . ."). Because plaintiffs have failed to demonstrate to a degree of legal certainty that their claims are worth less than $75,000, their challenge to this Court's subject matter jurisdiction fails. Removal was proper and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Diversity of citizenship has not been contested by defendants and is not at issue here.

**II.      Personal Jurisdiction**

*1.   Legal Standard for Rule 12(b)(2) Motions*

Federal Rule of Civil Procedure 12(b)(2) allows defendants to assert personal jurisdiction defenses by motion.  Fed. R. Civ. P. 12(b)(2). When a defendant makes such a motion, the plaintiff must sustain its burden of proof to demonstrate that in personam jurisdiction lies. Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  In resolving a 12(b)(2) motion, the court accepts plaintiffs' allegations in the complaint as true, and construes ambiguous facts in plaintiff's favor.  Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330-31 (3d Cir. 2009). Despite this, "[a]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction . . . .  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations."  Time Share Vacation Club, 735 F.2d at 66 n.9 (citations omitted).

*2.   Legal Standard for Demonstrating Personal Jurisdiction*

Pursuant to Federal Rule of Civil Procedure 4(e), "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits."  Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's "long-arm statute" provides for personal jurisdiction to the extent permitted by the Fourteenth Amendment to the United States Constitution.  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992).

When a long-arm statute authorizes jurisdiction to the constitutional limit, the determination that an exercise of personal jurisdiction comports with due process turns on the question of "whether the defendant purposefully established 'minimum contacts' in the forum

State." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 108-09 (1987) (citations omitted); see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-19 (1945) (establishing minimum contacts doctrine).  In short, a federal district court in New Jersey can exercise jurisdiction over the defendants "only if [plaintiff] can demonstrate that [defendant's] contacts with New Jersey are sufficient to satisfy the Due Process Clause of the United States Constitution."  Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990); see also Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971) (acknowledging that New Jersey courts consider federal constitutional law in ascertaining the limits on personal jurisdiction).

The Due Process Clause of the Fourteenth Amendment permits a forum state to exercise *general* personal jurisdiction over a non-resident defendant when that defendant has "continuous and systematic" contacts with the state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).  The Due Process Clause also allows a forum state to exercise *specific* personal jurisdiction over a non-resident defendant if that defendant has the "minimum contacts" with the state such that "subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice."  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 369 (3d. Cir. 2002).

3. *Personal Jurisdiction Based on Operation of a Web Site*

In the past fifteen years, the increasing popularity of the internet has led courts to examine a defendant's internet activity as a potential basis for jurisdiction, but the Supreme Court has not yet spoken on this subject.  Zippo Manufacturing Company v. Zippo Dot Com, 952 F. Supp. 1119 (W.D. Pa. 1997), a seminal case endorsed by the Third Circuit, considered whether a defendant's operation of a website could satisfy a federal court's exercise of personal jurisdiction over that defendant.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451-54

6

(3d Cir. 2003); Spuglio v. Cabaret Lounge, 344 Fed. Appx. 724, 726 (3d Cir. 2009).  The Zippo court created a "sliding scale", whereby the quality of contacts between a web host and a forum is evaluated by examining the website's nature and functions.  Zippo, 952 F. Supp. at 1124.  At one end of the scale are those web hosts who actively solicit business over the internet by using their websites to enter contracts or exchange data files.  Id.  If they engage in such activity knowing that their would-be customers are in another forum, jurisdiction over the web hosts in that forum is proper.  Id. (citing Compuserve, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996)).  On the other end of the scale are passive hosts with purely informational websites that allow no interaction through the site – these websites do not themselves create sufficient contacts between the web host and other forums to justify an extra-territorial court's exercise of jurisdiction.  Zippo, 952 F. Supp. at 1124.  In the middle are websites that allow the visitor to exchange information with the host, but do not affirmatively seek business from other states.  For such sites, jurisdiction must be determined on a case-by-case basis by looking at just how "interactive" and commercial in nature the exchange of information through the website is.  Id.

When a website is passive or falls in the middle of the Zippo sliding scale, plaintiffs may have to prove "something more" to justify the exercise of personal jurisdiction – that is, plaintiffs must show that the defendant "purposefully (albeit electronically) directed his activity in a substantial way to the forum state."  S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F.Supp.2d 537, 540 (E.D.Pa. 1999).  The "something more" can include evidence of non-internet contacts, such as ongoing communications with customers in the state, business trips to the state, advertisements in local publications, and business records of sales in the state.  Id. at 453.

*4. Discussion*

Defendants assert that the Court lacks personal jurisdiction because defendants' only contact with New Jersey is its informational website that can be accessed in New Jersey, and that the website does not rise to the level of minimum contacts under the Zippo sliding scale. (Defs.' Mot. to Dismiss 7-8.) Plaintiffs make two arguments in response. First, plaintiffs assert that defendants have waived their jurisdictional and venue defenses because "when a defendant asks for a removal under [28 U.S.C.] § 1441, the jurisdiction of the court is invoked by that defendant in the same action, and thus, the defendant has voluntarily submitted to the jurisdiction." (Pls.' Opp. Mem. 2.) This is incorrect. When an action is removed, any procedural defenses available to defendants in state court at the time of removal are preserved, so "[r]emoval, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction . . . ." Nationwide Eng'g & Control Sys., Inc. v. Thomas, 837 F.2d 345, 347-48 (8th Cir. 1988); see, e.g., Brown v. AST Sports Sci., Inc., Civ. No. 02-1682, 2002 WL 32345935, at *14-15 (E.D. Pa. June 28, 2002) ("Petitioning for removal does not amount to consenting to personal jurisdiction."). Defendants did not make a general appearance or submit an answer before raising their jurisdictional defense in the pending motion, so there has been no waiver and defendants' 12(b)(2) defense is still available. This leaves only the core question of whether defendants are indeed subject to this Court's jurisdiction.

Second, plaintiffs allege that defendants' website and internet advertisements constitute contacts sufficient to establish specific jurisdiction. (Pls.' Opp. Mem. 4.) Plaintiffs, however, have neither proven that defendants' website was commercially interactive under the Zippo scale, nor that there was "something more" to show that defendants purposefully availed themselves of the laws of New Jersey. Plaintiffs have provided this Court with nothing more

than unspecific allegations and a link to the current version of defendants' website. That is not enough. See Stranahan Gear, Inc. v. NL Indus., Inc., 800 F.2d 53, 58 (3d Cir. 1986).

All of the events described in the complaint took place in Florida with the possible exception of alleged communications between the parties. As for the website, plaintiffs offer few facts that would support a finding of minimum contacts under Zippo. First, plaintiffs claim generally that defendants advertized their services through "media and the internet." (Compl. 8.) Plaintiffs do not elaborate, such as by asserting that defendants placed an advertisement in plaintiffs' local New Jersey newspaper. A general internet advertisement that may be viewed globally is not alone enough to establish purposeful availment. See, e.g., Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1999) ("[S]o far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state.").

Second, plaintiffs provide the Court with a link to defendants' website. This is entitled to no weight because it lacks an accompanying assertion that the current site has not been changed since the time of the events giving rise to this dispute.

Third, plaintiffs claim that "[d]efendant admits that it is not only making information available on the Internet, but that its website contains contracts to fill in by prospective customers." (Pls.' Opp. Mem. 4.) Such an admission is found nowhere in the pleadings of defendants – neither in the affidavit of Dotty Bollinger, nor anywhere else in the record. Defendants, rather, acknowledge that the website contained a *contact* form. (Aff. of Dotty Bollinger ¶ 6). Defendants' operation of an informational website with a contact form is the only fact that this Court can consider in its minimum contacts analysis.

9

A website that has only information and a generic contact information input form falls at the passive end of the Zippo scale. New Generation Devices Inc. v. Slocum Enters., Inc., Civ. No. 04-2583, 2005 WL 3078181, at *5 (D.N.J. Nov. 15, 2005) (holding that an informational website that "merely allows interested parties to enter their contact details" does not establish personal jurisdiction). This is the prevailing view in courts across the country. See, e.g., Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (holding that a website that allows visitors to submit an inquiry form is not sufficiently interactive); Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 401 (4th Cir. 2003) (holding that a website for an Illinois-based nonprofit which solicits donations was insufficient to establish minimum contacts); Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. 1999) (finding that a website that allows visitors to email the company is not sufficiently interactive); see generally S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d 537, 539-41 (E.D. Pa. 1999) (finding that a website which merely provides information and allows visitors to contact merchant is not sufficient to establish personal jurisdiction).

In addition, plaintiffs have not alleged that they utilized the contact form or that the website had any role other than passively conveying information to the plaintiffs, leading them to travel to Florida to patronize defendants' services. Indeed, plaintiffs do not provide any specific details about the instances of communications between themselves and Laser Spine Institute. Finally, the undisputed fact that Laser Spine Institute did business with Felicia Morilla in Florida cannot establish minimum contacts because plaintiff's unilateral act of traveling to Florida cannot be fairly counted as "contact" between defendants and New Jersey. See Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some

relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

## CONCLUSION

For the reasons stated, the Court finds that it has subject matter jurisdiction over the pending case, allowing it to resolve this motion to dismiss.  Nevertheless, plaintiffs have failed to plead sufficient jurisdictional facts to justify the Court's exercise of personal jurisdiction over defendants.  All of the events at issue occurred in Florida and plaintiffs have not alleged facts sufficient to show that defendants' website is commercially interactive, which would justify a finding that defendants purposefully availed themselves of New Jersey.  Because this Court finds that it may not exercise personal jurisdiction over defendants, the motion to dismiss without prejudice is granted.

August 16, 2010                                                                    **/s William H. Walls**
                                                                                             United States Senior District Judge